**UNITED STATES of America,
Appellant,**

v.

**Carlos CARRASCO, Defendant–
Appellee.**

**Docket No. 01–1646.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 15, 2002.

Decided: Dec. 20, 2002.

Sara M. Lord, Asst. U.S. Atty., Albany, N.Y. (Joseph A. Pavone, U.S. Atty., Robert P. Storch, Asst. U.S. Atty., Albany, N.Y., on the brief), for Appellant.

Frederick Rench, Clifton Park, N.Y., submitted a brief for Defendant–Appellee.

Before: NEWMAN and POOLER, Circuit Judges, and JONES *, District Judge.

JON O. NEWMAN, Circuit Judge.

This sentencing appeal requires consideration of the outer limits of a sentencing judge's departure authority under the Sentencing Guidelines. The United States appeals the November 29, 2001, judgment of the District Court for the Northern District of New York (Frederick J. Scullin, Jr., District Judge) imposing a sentence of 26 months on Carlos Carrasco for violating 8 U.S.C. § 1326, which prohibits previously deported aliens from reentering the country without permission from the Attorney General. In sentencing Carrasco, the District Judge justified a downward

---

* Honorable Barbara S. Jones of the United States District Court for the Southern District of New York, sitting by designation.

departure on three grounds: the "lesser harm" provision, see U.S.S.G. § 5K2.11; the "exceptional family circumstances" provision, id. § 5K2.0; and the "overstatement of the seriousness of the offense" provision, see id. § 4A1.3, which authorizes a so-called "horizontal departure" to a lesser Criminal History Category ("CHC"). Although we are mindful of the often broad departure authority of a sentencing judge and of our own limited scope of review, see Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), we conclude that the "lesser harm" and "exceptional family circumstances" grounds are unavailable in this case, and that the CHC reduction, if available at all, would require findings not yet made. We therefore remand for resentencing.

## Background

Carrasco, a native and citizen of the Dominican Republic, lawfully entered the United States in September 1992 to join his wife and subsequently obtained legal status. In 1999, he was convicted in a Massachusetts state court of the felony of possessing heroin with intent to sell, and was sentenced to two and a half years in prison. In July 2000, following his release, he was deported to the Dominican Republic because of his conviction.

Two months later, Carrasco attempted to enter the United States illegally at Champlain, New York, as a passenger in a car. After falsely identifying himself under two different names and denying both a criminal record and any problems with the INS, he was correctly identified by the driver of the car. Carrasco was charged with illegal reentry following deportation in violation of 8 U.S.C. § 1326, and pled guilty.

The presentence report ("PSR") recommended that the base offense level of 8 for "unlawfully entering or remaining in the United States," see U.S.S.G. § 2L1.2(a), be increased by 16 levels because Carrasco had been convicted of an "aggravated felony," see U.S.S.G. § 2L1.2(b)(1)(A) (1998).[1] An adjusted offense level of 21 was recommended, presumably because of a three-level reduction for acceptance of responsibility. See id. § 3E1.1. The PSR calculated that Carrasco's prior record placed him in CHC III (after a correction not relevant to this appeal), which resulted in a recommended sentencing range of 46 to 57 months.

At sentencing, Carrasco contended that he had reentered this country with the intention of returning to his native country to care for his three children after visiting his ailing father. Carrasco's wife and their two daughters, as well as a third child of Carrasco's by another woman, all currently live in the Dominican Republic. He had also stated that he had a good relationship with his wife, but he had previously told the U.S. Pretrial Services that he was separated from his wife due to personal problems.

At the sentencing hearing, the District Court, sua sponte, stated that Carrasco's placement in CHC III overstated the seriousness of his prior record and reduced it to CHC II. See U.S.S.G. § 4A1.3. No findings were made to support this reduction. The adjusted offense level of 21 and CHC II resulted in a sentencing range of 41 to 51 months.

Agreeing with arguments in Carrasco's sentencing memorandum, the District

---

1. The Guidelines have since been amended. However, even under the amended Guidelines, Carrasco would have received the same 16–level enhancement under section 2L1.2(b)(1)(A)(i) as a previously deported alien convicted of "a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months."

Judge made a further departure based both on "lesser harm" and "exceptional family circumstances." Judge Scullin stated:

I do find that there are, under the circumstances of this case, that there are facts and circumstances which are exceptional, taken out of the heartland of cases, for the reasons stated in the defendant's sentencing memorandum both for 5K2.0 [exceptional family circumstances] and 5K2.11 [lesser harm]. The evidence, facts, undisputed facts are clear that this reentry was not for purposes of committing future crimes, even though counsel for the Government advises the Court we shouldn't speculate, I agree with you, we shouldn't speculate that he's going to commit more crimes here. I think the evidence supports the fact that he was not about to come in this country to engage in criminal activity. The criminal activity for which he was deported happened almost more than 10 years ago, so I think under the facts and circumstances here, that motion is appropriate and I'm going to grant it, for both, combination of reasons, both 5K2.0 and 5K2.11.

The Court sentenced Carrasco to 26 months plus a three-year term of supervised release, with the added condition of not reentering the United States again.

## Discussion

The Supreme Court has made it clear that a district court's decision to depart from the Guidelines "will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Koon,* 518 U.S. at 98, 116 S.Ct. 2035 (citation omitted). Both before and after *Koon,* we have accorded district judges ample discretion in determining both the appropriateness and the extent of a departure.

*See, e.g., United States v. Karro,* 257 F.3d 112, 118–121 (2d Cir.2001) (affirming both direction and degree of the district court's five-level upward departure); *United States v. Franklyn,* 157 F.3d 90, 97–100 (2d Cir.1998) (affirming each of district judge's three upward departures); *United States v. Campbell,* 967 F.2d 20, 26 (2d Cir.1992) (appellate courts should review district courts' sentencing departures for "reasonableness"). However, the authority to make a departure must be exercised in conformity with the statutory standard, which specifies that the sentencing judge may depart from an otherwise applicable sentencing range when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines ...," 18 U.S.C. § 3553(b), and in accord with the policy statements that the Commission has issued to guide the exercise of departure discretion. In addition, where departure authority is available to be exercised, a district court must identify, with appropriate findings, the circumstance(s) upon which it relied. With these principles in mind, we consider each of the three grounds on which Judge Scullin based his departure.

## I. "Lesser Harm" Departure

The Sentencing Commission's policy statement on a "lesser harm" departure explains its two rationales in these terms:

Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is

not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected.

In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

U.S.S.G. § 5K2.11.

Of the two grounds for a "lesser harm" departure—the defendant acted to avoid a greater harm or the defendant's conduct did not cause or threaten the evil to be prevented by the statute that was violated—it is clear from Judge Scullin's sentencing remarks that he relied on the second rationale. However, he did not apply a "lesser harm" departure in the belief that Carrasco's conduct did not cause the harm sought to be prevented by section 1326. Instead, he made a "lesser harm" departure because he thought that Carrasco's conduct did not cause the harm sought to be prevented by the Guidelines' 16–level enhancement applicable to reentering aliens who were deported for committing an aggravated felony. U.S.S.G § 2L1.2. In the Judge's view, that enhancement imposes extra punishment in order to deter only those deported aliens who reenter for the purpose of committing further crimes. In sentencing a similarly situated defendant, Judge Scullin expressed his understanding of section 2L1.2 in these words:

And I think the 16–level enhancement, as [defense counsel] points out, is a Draconian approach to aggravated felons, in particular people who society has to be

concerned about, these repeat offenders, coming back in here to continue that conduct or threaten that kind of conduct.

With respect to Carrasco, the Judge found:

The evidence, facts, undisputed facts are clear that this reentry was not for purposes of committing future crimes.... I think the evidence supports the fact that he was not about to come in this country to engage in criminal activity.

Having found that Carrasco had not illegally reentered for the purpose of committing another crime, Judge Scullin deemed him eligible for a "lesser harm" departure.

■ The determination of what "harm" a statute is intended to prevent is an issue of law, which we review *de novo*. Focusing on the statute that Carrasco violated, as the "lesser harm" policy statement directs us to do, we have no doubt that section 1326 is designed to deter deported aliens from illegally reentering for any reason, not merely from reentering in order to commit a crime. The statute authorizes a maximum penalty of two years for the general offense of illegally reentering after deportation, and provides a ten-year maximum for aliens, like Carrasco, who illegally reenter after being deported for having committed an aggravated felony. The enhanced maximum penalty reflects the past misconduct of the illegally reentering alien, and the statute is not concerned with the alien's purpose in illegally reentering. As many courts have held, section 1326 makes a deported alien's unauthorized presence in the United States a crime in itself; being "found" in the United States is an independent basis for prosecution. *See, e.g., United States v. Acevedo*, 229 F.3d 350, 355 (2d Cir.2000).

■■ Even if the "lesser harm" departure provision focused on the harm sought to be prevented by the Guidelines provision that enhances punishment for previ-

ously deported aggravated felons who attempt to reenter, which it does not, there is no basis for the District Judge's supposition that this enhancement adds punishment only to prevent a deported alien who has committed an aggravated felony from reentering for the purpose of committing another crime. Paralleling the enhanced maximum provision of the statute, the enhanced offense level of the Guidelines provides added punishment to reflect the greater culpability of an alien who illegally reenters after committing an aggravated felony. In providing the enhancement, the Commission may well have thought, as the First Circuit suggested, that

> an alien who, having been deported following a conviction for an aggravated felony, and having exhibited a willingness to flout our laws again by reentering the country without permission, may be more likely to commit serious crimes than an alien who unlawfully reenters this country with no criminal record or with a less sullied record, and, thus, deserves a sentence possessing greater deterrent impact.

*United States v. Zapata,* 1 F.3d 46, 49 (1st Cir.1993). But even if the enhancement is provided because of a somewhat greater likelihood that the reentering alien who has committed an aggravated felony will commit another crime, the enhancement provision does not require any evidence that such a purpose exists, and the absence of such evidence does not provide a valid basis for a "lesser harm" departure. The "harm" remains the illegal entry.

The examples of lesser harm offered by the Commission in its explanation of section 5K2.11 indicate the narrow scope of this ground of departure: "a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program." U.S.S.G. § 5K2.11.

Unlike these examples of a technical violation of a statute, committed for a benign purpose, a deported alien reentering the country illegally, even without intent to commit a crime, has done the essence of what the statute is intended to prohibit. Carrasco is not eligible for a "lesser harm" departure.

2. Exceptional Family Circumstances Departure

■ Although family ties and responsibilities are not "ordinarily" relevant in determining whether to grant a downward departure, *see* U.S.S.G. § 5H1.6, "extraordinary circumstances," *United States v. Abreu–Cabrera,* 64 F.3d 67, 76 (2d Cir. 1995), may justify a departure under § 5K2.0. *See United States v. Galante,* 128 F.3d 788, 788 (2d Cir.1997) (in banc) (limiting departure authority to "truly exceptional family circumstances"); *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991) (departure upheld for defendant who worked two jobs to support his wife, two children, grandmother, and a disabled father who depended on defendant to get in and out of wheelchair); *United States v. Johnson,* 964 F.2d 124, 129 (2d Cir.1992) (departure upheld for defendant who was solely responsible for the upbringing of four young children, including an infant). However, the departure must be based on factual findings supported by the record. *See, e.g., United States v. Simpson,* 7 F.3d 813, 819 (8th Cir.1993).

■ In this case, the District Judge made no findings that would support a departure for exceptional family circumstances. That omission would normally require a remand, but a remand is not necessary on this aspect of the appeal because the evidence provides no basis for a finding that Carrasco's family circumstances are exceptional. He is separated from his wife. Even if he is providing

some support for his three children, being the father of three children is in no sense an exceptional circumstance. Nor does the illness of Carrasco's father, residing in this country, provide a basis for a family circumstances departure. Regardless of the length of Carrasco's sentence, he will not be able to attend to his father because, upon his release, he will be immediately deported. To whatever extent Carrasco might aid his father financially after deportation, the need for such assistance cannot justify a departure in view of the "considerable personal success" achieved by Carrasco's siblings. Brief for Appellee at 1–2. On this record, family circumstances cannot provide the basis for a departure.

3. Criminal History Category Departure

■ The PSR recommended placing Carrasco in CHC III because his criminal history point score totaled 6: 3 points because the sentence for the prior narcotics offense exceeded one year and one month,[2] *see* U.S.S.G. § 4A1.1(a); 2 points because the instant offense was committed while Carrasco was on parole, *see id.* § 4A1.1(d); and 1 point because the instant offense was committed within two years of Carrasco's release from prison, *see id.* § 4A1.1(e).[3]

■ Although the District Judge did not cite any provision of the Guidelines to support the horizontal departure from CHC III to CHC II, the only possibly relevant basis would have been U.S.S.G. § 4A1.3, which applies when "a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes."[4] This type of departure is most frequently used when a series of minor offenses, often committed many years before the instant offense, results in a CHC that overstates the seriousness of the defendant's prior record. *See, e.g., United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir.2001) (fact that small prior sentences count in determining CHC and do not justify "routine horizontal departures for all street-sellers does not mean that the relationship between a particular defendant's CHC VI sentencing range and the time he served on his prior sentences, in combination with other factors ..., might not warrant a departure" under section 4A1.3). Although it would be unusual for a CHC based on one prior offense to overstate the seriousness of a criminal record, such a case might conceivably arise if

---

**2.** "A conviction taken into account under subsection 2L1.2(b)(1) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)." U.S.S.G. § 2L1.2, comment. n. 5 (2002). *See Zapata*, 1 F.3d 46 (rejecting defendant's challenge to district court's refusal to grant a downward departure based on claim of impermissible double-counting under section 2L1.2 and section 4A1.1); *United States v. Crawford*, 815 F.Supp. 920, 925–926 (E.D.Va.1993) (same). As the Eleventh Circuit noted in *United States v. Adeleke*, 968 F.2d 1159 (11th Cir.1992), the policies underlying section 2L1.2 and section 4A1.1 are "divergent": "[t]he criminal history section is designed to punish likely recidivists more severely, while the enhancement under § 2L1.2 is designed to deter aliens who have

been convicted of a felony from re-entering the United States." *Id.* at 1161 (citation omitted). The Guidelines, therefore, explicitly contemplate that both section 2L1.2 and section 4A1.1 apply in a case like Carrasco's.

**3.** Subsection 4A1.1(e) normally requires an additional 2 points, but specifies the addition of only 1 point if, as in Carrasco's case, 2 points have already been added pursuant to subsection 4A1.1(d).

**4.** The circumstances of the prior offense could not be used to make a vertical departure in order to avoid the rigor of the 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A). *See United States v. Tappin*, 205 F.3d 536, 540–43 (2d Cir.2000).

the facts of the prior offense revealed that the conduct underlying the conviction was relatively minor, despite the imposition of a sentence that required extra criminal history points. *Cf. United States v. Miller,* 263 F.3d 1, 4 n. 3 (2d Cir.2001) (citing *United States v. Fuller,* 15 F.3d 646, 651 (7th Cir.1994) for the proposition that conduct underlying prior arrests may be used to justify increased CHC under section 4A1.3). We emphasize, however, that exceptional circumstances would have to be shown to warrant a horizontal departure that reduces the CHC for a defendant with only one prior conviction, and detailed findings would have to be made to demonstrate entitlement to such a departure in such circumstances. Because we cannot rule out the possibility, however unlikely, that a valid horizontal departure under section 4A1.3 might be made in this case, we will remand to afford the District Judge an opportunity to make findings that would support such a departure.[5]

## Conclusion

We reverse the departures for "lesser harm" and "exceptional family circumstances," and remand for resentencing consistent with this opinion.

---

**5.** The District Judge's statement at sentencing that "[t]he criminal activity for which [Carrasco] was deported happened almost more than ten years ago" was clearly erroneous; the offense was committed in October 1998, and sentencing occurred in 2002.