**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

GUSTAVO CRUZ-GRAMAJO,
            *Defendant-Appellant.*

No. 07-50381

D.C. No.
CR-07-00479-R-01

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

RAY AGUILAR-RODRIGUEZ, also
known as Renaldo Aguilar
Rodriguez, also known as
Benjamin Aguilar, also known as
Rey A. Rodriguez, also known as
Ray Rodriguez,
            *Defendant-Appellant.*

No. 07-50477

D.C. No.
CR-07-00900-RGK-
001

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

8097

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ERNESTO PULIDO,
          *Defendant-Appellant.*

No. 07-50534

D.C. No.
CR-07-00424-AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
October 24, 2008—Pasadena, California

Filed June 26, 2009

Before: Harry Pregerson, Cynthia Holcomb Hall and
N. Randy Smith, Circuit Judges.

Opinion by Judge Hall;
Partial Concurrence and Partial Dissent by Judge Pregerson

## COUNSEL

Phillip I. Bronson, Sherman Oaks, California, for defendant-appellant Cruz-Gramajo; Davina T. Chen, Deputy Federal Public Defender, for defendant-appellant Aguilar-Rodriguez; Michael Tanaka, Deputy Federal Public Defender, for defendant-appellant Pulido; Gia Kim Deputy Federal Public Defender, for defendants-appellants Aguilar-Rodriguez and Pulido.

Jeff P. Mitchell, Assistant United States Attorney, Domestic Security and Immigration Crimes Section; Erik M. Silber,

Assistant United States Attorney, Criminal Appeals Section, Los Angeles, California, for the plaintiff-appellee.

## **OPINION**

HALL, Circuit Judge:

These consolidated cases concern the Sentencing Guidelines applicable to illegal reentry into the United States in violation of 8 U.S.C. § 1326. The facts in each case are similar. Defendants are foreign citizens who were deported and then returned to this country without permission. After their illegal reentries — but before immigration authorities discovered them — Defendants committed and were convicted for various state law offenses, including burglary, driving under the influence, and evading police. At sentencing for their § 1326 offenses, the district courts held that Defendants' intervening state law crimes constituted "criminal history" for purposes of calculating their Guidelines ranges.

Defendants attack these holdings. They note that the Guidelines exclude from "criminal history" acts that are defined as "relevant conduct" to the conviction offense. Relevant conduct, they argue, includes conduct occurring "during" the conviction offense. Illegal reentry is a continuing offense that lasts from reentry until the violator is found by immigration authorities. Therefore, Defendants argue, the state law crimes they committed after returning to this country were still "during" their § 1326 offenses and thus do not constitute "criminal history." Defendants' argument ignores the context, structure and purpose of the Guidelines. We affirm the district courts' decisions to include Defendants' intervening state law crimes in the criminal history calculation.

Defendants Gustavo Cruz-Gramajo ("Cruz-Gramajo") and Ray Aguilar-Rodriguez ("Aguilar-Rodriguez") raise an addi-

tional issue. In addition to calculating criminal history points for the intervening crimes themselves, the district courts gave them points for violating § 1326 while under a criminal justice sentence. Cruz-Gramajo and Aguilar-Rodriguez argue these rulings were erroneous, because the sentences at issue were for crimes they committed *after* illegally returning. We affirm the district court's ruling as to Aguilar-Rodriguez, and need not decide the issue raised by Cruz-Gramajo, as any potential error is harmless.

## I.  Background

### A.  Cruz-Gramajo

Cruz-Gramajo is a citizen of Mexico. In January 2000, he was convicted of possessing marijuana with intent to sell, in violation of Cal. Health & Safety Code § 11359. After serving prison time for the drug offense, Cruz-Gramajo was deported in April 2003 and then again in September 2004. Cruz-Gramajo returned yet again, apparently at some point in 2006. In March 2006, he committed grand theft and burglary, in violation of Cal. Penal Code §§ 487 and 459, respectively. For each offense, Cruz-Gramajo was sentenced to approximately one year in jail and three years probation. On February 23, 2007, while still incarcerated in Los Angeles County Jail, Cruz-Gramajo came to the attention of immigration officials. He was then charged with being an alien found in the United States after having been deported, in violation of § 1326.[1] The

---

[1]The statute provides in relevant part:

(a) In general

Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the

district court found Cruz-Gramajo guilty after a one-day bench trial.

At sentencing, and over Cruz-Gramajo's objection, the district court held that the grand theft and burglary convictions constituted "criminal history," each resulting in two criminal history points pursuant to U.S.S.G. §§ 4A1.1(b) and 4A1.2(e)(2). Also over Cruz-Gramajo's objection, the district court added two criminal history points under U.S.S.G. § 4A1.1(d) for committing the illegal reentry while under a criminal justice sentence. Together with the three criminal history points for the drug possession charge, the court found that Cruz-Gramajo had a total of nine criminal history points, which resulted in a criminal history category of IV. The court also calculated a total offense level of twenty-one (resulting from a base offense level of eight, a sixteen-level enhancement because the marijuana conviction was a drug trafficking offense, and a three-point reduction for acceptance of responsibility). This resulted in a Guidelines range of fifty-seven to seventy-one months. The court imposed a fifty-seven-month sentence.

---

United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a). Subsection (b) extends the maximum period of imprisonment if the defendant was deported after previously having been convicted of various crimes. Defendants do not dispute that the offenses they committed before they were deported fall under § 1326(b).

### B.  Aguilar-Rodriguez

Aguilar-Rodriguez also appeals his sentence for violating § 1326. A citizen of Mexico, Aguilar-Rodriguez was convicted on September 15, 1997, for possession of a controlled substance for sale in violation of Cal. Health & Safety Code § 11351(a). Aguilar-Rodriguez was deported from the United States in October 1998, and reentered on or about May 1, 2005. After he returned, Aguilar-Rodriguez was twice convicted for driving under the influence in violation of Cal. Vehicle Code § 23152(b), once in 2005 and again in 2007.[2] Apparently due to the second DUI, Aguilar-Rodriguez was found in Los Angeles by immigration officials on or about July 10, 2007.

Aguilar-Rodriguez's § 1326 case received "fast track" treatment, and his binding plea agreement was entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.[3] The parties agreed to a sentence at the low end of the Guideline range, determined by an offense level of seventeen and the criminal history the district court calculated.

---

[2] Aguilar-Rodriguez's probation from the first DUI was revoked in October 2005, and a bench warrant was issued which remained outstanding at the time of Aguilar-Rodriguez's sentencing for his § 1326 conviction.

[3] Under this rule, the parties to a plea agreement may "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply . . . ." Fed. R. Crim. P. 11(c)(1)(C). "[S]uch a recommendation or request binds the court once the court accepts the plea agreement . . . ." *Id.* "Fast track" treatment refers to the government stipulating to an offense level that includes a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and a four-level reduction for participation in the "early disposition program" under § 5K3.1. In exchange, the defendant waives indictment and agrees that the appropriate sentence is the low-end of the applicable Guideline range, effectively waiving any argument that his sentence should be lower under the 18 U.S.C. § 3553(a) factors.

Over Aguilar-Rodriguez's objection, the district court treated the DUIs as criminal history, each worth two criminal history points. Additionally, in a ruling that Aguilar-Rodriguez did not dispute below, the court added two criminal history points under U.S.S.G. § 4A1.1(d) on the ground that Aguilar-Rodriguez committed § 1326 offense while on probation for the DUI convictions. Together with five points that are not in dispute, the district court ruled that Aguilar-Rodriguez had eleven criminal history points, resulting in a criminal history category of V. This resulted in a Guideline range of forty-six to fifty-seven months. The district court sentenced Aguilar-Rodriguez to forty-six months in prison.

## C. Pulido

Ernesto Pulido also appeals his § 1326 sentence. In February 2001, Pulido was convicted of cultivating marijuana in violation of Cal. Health & Safety Code § 11358. He was deported from the United States on or about March 2, 2006, and returned shortly thereafter. About three weeks later, on March 21, 2006, Pulido violated Cal. Vehicle Code § 2800.2 by evading a police officer during a traffic stop. Immigration officials became aware of Pulido that same day.

Pulido was charged with violating § 1326. Like Aguilar-Rodriguez, his case received "fast track" treatment, and he entered a binding plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The agreement stipulated that Pulido's total offense level was seventeen and provided that the appropriate sentence would be the low end of the Guidelines range in light of the criminal history calculated by the district court.

Over Pulido's objection, the district court treated the 2006 conviction for evading police as criminal history, which resulted in a criminal history category of VI and a Guideline range of fifty-one to sixty-one months. The court sentenced Pulido to fifty-one months in prison.

## II.    Standard of Review

We review de novo the district court's application of the Guidelines, including whether a prior conviction may be used for sentencing purposes. *See United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 856 (9th Cir. 2005). We review "the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005). "Remand is not necessary if 'the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed.' " *United States v. Rutledge*, 28 F.3d 998, 1003 (9th Cir. 1994) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

## III.    Discussion

### A.    Criminal History Calculation

When interpreting the Sentencing Guidelines, we apply " 'the rules of statutory construction.' " *United States v. Valenzuela*, 495 F.3d 1127, 1133 (9th Cir. 2007) (quoting *United States v. Robinson*, 94 F.3d 1325, 1328 (9th Cir. 1996)). Under these rules, "[t]he plain meaning of unambiguous language in a guideline provision controls." *Id.* While the "starting point is always the language of the statute itself," *Jeffries v. Wood*, 114 F.3d 1484, 1495 (9th Cir. 1997), "[r]ather than focusing just on the word or phrase at issue, this court looks to the entire statute to determine . . . intent." *Sanchez v. Pacific Powder Co.*, 147 F.3d 1097, 1099 (9th Cir. 1998) (citing *Duffield v. Robertson Stephens Co.*, 144 F.3d 1182, 1192-93 (9th Cir. 1998) ("When examining the language of the governing statute, we must not be guided by a single sentence . . . , but look to the provisions of the whole law, and to its object and policy.") (citations omitted)). "Thus,

the structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions." *The Wilderness Society v. United States Fish & Wildlife Srv.*, 353 F.3d 1051, 1060-1061 (9th Cir. 2003) (en banc) (citing *United States v. Lewis*, 67 F.3d 225, 228-29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme.")). Using these principles to evaluate the purpose, structure, and interactions of Guidelines §§ 4A1.2, 1B1.3 and 2L1.2, in light of the overarching goals in sentencing, we hold that § 4A1.2 does not preclude the district court from assigning criminal history points for sentences received after an illegal entry, but before an alien is found by immigration authorities.

**[1]** The Guidelines determine sentencing ranges by computing an "offense level" and a "criminal history" category. Defendants receive criminal history points for certain "prior sentences." *See* U.S.S.G. §§ 4A1.1, 4A1.2. "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt . . . for conduct *not part of the instant offense*." U.S.S.G. § 4A1.2(a)(1) (emphasis added). Under this definition, conduct that *was* "part of the instant offense" cannot receive criminal history points. *See id.* The commentary associated with section 4A1.2 further elaborates on what is meant by the term prior sentence.

> "Prior sentence" means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense. *Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct).*

U.S.S.G. § 4A1.2, cmt. n.1.[4] (emphasis added) (internal citations omitted).

Defendants argue that because a violation of § 1326 is considered a continuing offense that extends from the moment of illegal reentry until discovery by immigration officials, *see, e.g.*, *United States v. Reyes-Pacheco*, 248 F.3d 942, 946 (9th Cir. 2001), their state law offenses should be considered relevant conduct to their unlawful reentry. Defendants rely on the description of relevant conduct in § 1B1.3 which includes "all acts and omissions committed . . . by the defendant . . . that occurred *during the commission of the offense of conviction*, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . ." (emphasis added).[5] Thus, they argue that their intervening

---

[4]"[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). The government concedes that the commentary here is authoritative.

[5]U.S.S.G. § 1B1.3(a) provides in its entirety:

*Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of

state offenses occurred "during" their § 1326 offenses as a temporal matter,[6] and that this temporal relationship is sufficient to deem the state offenses "relevant conduct," thereby precluding the district court from considering the convictions as part of their criminal history calculation.

The government contests the Defendants' interpretation of the word "during." The government does not dispute that illegal reentry is a continuing offense, or that the state offenses at issue occurred during the illegal reentries as a temporal matter. Instead, the government contends that a temporal relationship is not enough. The government reads the "during" provision as only encompassing conduct that was both "during" *and* "in connection with" the conviction offense. In other words, the government contends that to constitute "relevant conduct" under § 1B1.3's "during" provision, other offenses must also be logically related to the offense for which a sentence is being imposed, and that such a logical relationship is absent here.

---

attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

[6]Defendants rely on the recent decision *United States v. Ressam*, where the Supreme Court held that the word "during" in 18 U.S.C. § 844(h), which punishes any individual who "carries an explosive *during* the commission of any felony," implies only a temporal relationship. *See* 128 S.Ct. 1858, 1860-61 (2008) (emphasis added). We separately note that the word "carries" limits even this statute's reach beyond merely the temporal requirement provided by the word "during."

Both Defendants and the government cite precedent interpreting the phrase "during the commission of the offense of conviction" in § 1B1.3 to support their respective positions. The Defendants rely upon *United States v. Johnson*, 187 F.3d 1129 (9th Cir. 1999), and *United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008) as implicitly holding that a temporal relationship was sufficient to include acts committed by defendants under relevant conduct. Both cases, however, reviewed the application of an enhancement for acts committed by the defendant "during the commission of the offense of conviction" that were *also* related logically to the offense. The cases did not decide what conduct the district court was *precluded* from considering as part of criminal history, but rather what conduct the district court was *permitted* to include in its consideration of relevant conduct. The government's reliance on precedent from other circuits, though helpful in illustrating what results may follow from interpreting "during" to require only a temporal nexus to the offense,[7] also do not address the precise issue in this case.

The government correctly notes that the context of the phrase and the structure and purpose of the Guidelines are relevant in determining the plain meaning of terms within a particular Guideline, rather than simply the definition of the language used. But both parties' reliance upon the meaning of

---

[7]*See, e.g.*, *United States v. Ritsema*, 31 F.3d 559, 567 (7th Cir. 1994) (noting the "absurd results" resulting if "[t]he temporal dimension of relevant conduct" could "cause a court to convert a single possession conviction into a sweeping tool to gather in all of the otherwise unrelated criminality of a defendant which occurred contemporaneously with the charge[d] offense"); *United States v. Kim*, 896 F.3d 678, 684 n.4 (2d Cir. 1990) (noting temporal-only requirement would convert "a barroom brawl occurring 'during' a three-month period in which a mail fraud offense was committed" to relevant conduct). These cases, rather than determining what constituted relevant conduct that a district court must exclude from criminal history, contemplated what conduct the government should not be *permitted* to consider relevant to a particular continuing offense, in order to increase the offense level calculated from the charged offense.

the phrase "during the commission of the offense," is misplaced. We need not decide the general scope of relevant conduct a court is permitted to evaluate as a broad proposition. What we instead decide today is the more narrow issue of whether § 4A1.2 precludes a district court from assigning any criminal history points for a sentence imposed prior to a defendant being "found" by immigration authorities, by defining that conduct as "part of the instant offense."

## 1.  § 4A1.2

We begin our analysis by examining § 4A1.2(a)(1), and application note 1, with the principles of statutory construction in mind. We note first that the purpose of § 4A1.2 is " 'to reflect the seriousness of a defendant's criminal history,' while, at the same time, avoiding 'overstat[ing] the seriousness of the defendant's criminal conduct.' " *United States v. Marler*, 527 F.3d 874, 879 (9th Cir. 2008) (quoting *United States v. Asberry*, 394 F.3d 712, 719 (9th Cir. 2005)). The "ultimate goal remains finding a sentence that accurately reflects both the seriousness of the underlying federal offense and the extent and nature of the defendant's criminal past." *Asberry*, 394 F.3d at 719.

**[2]** Section 4A1.2 uses two means of ensuring that a defendant's criminal history is not overstated. The first, at issue in this case, is the limitation that a "prior sentence" should incorporate only conduct "not part of the instant offense." The application note, however, expressly contemplates a situation in which a defendant's instant offense may be contemporaneous with conduct forming the basis of another sentence, and yet *not* be considered relevant conduct: "[a] sentence imposed after the defendant's *commencement* of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." § 4A1.2, cmt. n. 1 (emphasis added). The Sentencing Commission did not limit the definition of prior sentences to extend only to conduct committed entirely before

or after the conduct constituting the instant offense. Contrary to Defendant's interpretation, the use of the word "commencement" indicates that another offense can be committed and counted as a prior sentence, though committed "during the commission of the offense of conviction." As written, this sentence of the application note provides that Defendants' state law convictions may not be part of the instant offense, even if the sentences were imposed after Defendants commenced their § 1326 violations by illegally reentering the country. The application note goes on to explain that to be excluded as a prior sentence, the conduct must be relevant conduct: 1) to the instant offense, 2) under the provisions of § 1B1.3 (Relevant Conduct). *Id.* Therefore, deciding whether Defendants' state law convictions constitute relevant conduct requires applying all of the provisions of § 1B1.3 in light of the *instant offense*, a violation of § 1326, a task we undertake in the next section.

**[3]** The second means of preventing overstating, or double-counting of a defendant's criminal history is the limitation in § 4A1.2(a)(2), requiring: "[p]rior sentences imposed in related cases . . . to be treated as one sentence . . . ." Application note 3 clarifies that if the two prior sentences are not separated by an intervening arrest, they "are considered related if they resulted from sentences that (A) occurred on the same occasion,[8] (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." Thus, § 4A1.2 limits the number of points that can be assigned in criminal history by first ensuring that the prior sentence has not actually been calculated as "part of the instant offense," and secondly, by ensuring that prior cases, related to each other, do not count twice.

---

[8]In *United States v. Marler*, 527 F.3d 874, 877-881 (9th Cir. 2008), we held that the defendant's reliance on the "occurred on the same occasion" prong was insufficient to make two prior sentences related for the purposes of counting criminal history merely because one of the offenses was a continuing offense, escape, and therefore technically occurred contemporaneously with the other conviction for robbery.

### 2.   § 1B1.3

**[4]** The purpose of § 1B1.3 of the Guidelines, Relevant Conduct, is to "capture the real offense behavior" involved in defendant's conduct. *United States v. Romero*, 293 F. 3d 1120, 1124 (9th Cir. 2002). The Sentencing Commission accomplished this task by formulating a relevant conduct guideline which "identified the categories of misconduct that the sentencing judge *could* examine in determining whether to make . . . adjustments to the base offense level," specific offense characteristics, cross references, and adjustments and enhancements. *United States v. Kim*, 896 F.2d 678, 682 (2d Cir. 1990) (emphasis added); *see also* § 1B1.3(a). The provisions of § 1B1.3 are written broadly to provide sentencing judges maximum discretion, allowing flexibility in their application to a variety of crimes and circumstances. It is the provisions' interactions with numerous other guidelines, however, that determine what conduct is "relevant" to each specific guideline, as indicated by the title "Relevant Conduct." *See Singh v. Gonzalez*, 499 F.3d 969, 977 (9th Cir. 2007) (noting title "may be instructive in putting the statute in context") (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)).

Applying the relevant conduct guideline can facilitate a district court's consideration of germane uncharged conduct occurring before, during, or after the charge-offense. *United States v. Ritsema*, 31 F.3d 559, 567 (7th Cir. 1994). Conversely, the relevant conduct guideline can also limit the sentencing judge's discretion to consider conduct independently where it "involve[s] a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." § 1B1.3 (background). Thus, § 1B1.3(a)(2) of the relevant conduct guideline, in conjunction with U.S.S.G. § 3D1.2(d), provides that when conduct involves the same course of conduct or common scheme or plan, and the offense behavior and applicable guideline contemplate the total amount of harm or loss, or the involvement

of continuous behavior, the conduct is considered "relevant conduct" for guidelines calculation purposes.[9] "The reference to § 3D1.2(d), which provides for grouping of multiple counts arising out of a continuing offense, when the offense guideline takes the continuing nature into account, also prevents double counting." § 1B1.3 (background). But § 3D1.2 does not include the offense guideline applicable to illegal reentry violations, U.S.S.G. § 2L1.2, within its coverage, as the offense of being "found" does not contemplate continuous related harm or loss.

[5] An application note applicable to § 1B1.3(a)(2) explicitly cross-references § 4A1.2(a)(1), providing an example and explanation of the Sentencing Commission's intent regarding the interaction of the relevant conduct and prior sentence provisions. In application note 8, the example is given of a defendant engaging in two drug sales as part of the same course of conduct, facing conviction for one sale in state court and the second in federal court. In these circumstances, § 1B1.3 makes clear that the state law conviction constitutes relevant conduct, and not a prior sentence under § 4A1.2(a)(1). § 1B1.3, cmt. n. 8. In this case, Defendants do not argue that their state law convictions were pursuant to the same course of conduct as their illegal reentry, or that § 1B1.3(a)(2) is even applicable. Instead, they rely solely on the temporal link between the two offenses, caused by the continuous nature of an illegal reentry offense.

---

[9]Section 1B1.3(a)(3) continues this pattern of limiting conduct considered under relevant conduct by notions of proximate causation. Just as § 1B1.3(a)(2) limits its application to conduct "part of the same course of conduct or common scheme," the harm considered relevant for purposes of § 1B1.3(a)(3) is limited to harm that was a " 'direct result' or 'flowed naturally' from the defendant's criminal misconduct." *See United States v. Stoterau*, 524 F.3d 988, 998 (9th Cir. 2008) (quoting *United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000)). Defendants' interpretation of relevant conduct as including any conduct even temporally connected to an offense, by contrast, would inject a "but for" theory of actual causation into the definition of relevant conduct.

**[6]** Defendants' reliance on a mere temporal link to require the district court to consider the state law sentences relevant conduct, and therefore not prior criminal history, is insufficient. Section 1B1.3 does not create a scope of relevant conduct that has independent significance. Rather it merely defines the scope of conduct considered in determining the base offense level, specific offense characteristics, cross references, and adjustments involved. *See* § 1B1.3 (background) ("Subsection (a) establishes a rule of construction by specifying, in the absence of more explicit instructions in the context of a specific guideline, the *range of conduct that is relevant to determining the applicable offense level.*") (emphasis added); *see also* U.S.S.G. § 1B1.2, cmt. n. 2 ("Section 1B1.2(b) directs the court, once it has determined the applicable guideline . . . to determine any applicable specific offense characteristics (under that guideline), and *any other applicable sentencing factors* pursuant to the relevant conduct definition in § 1B1.3.") (emphasis added). Thus, because Defendants' state law offenses do not fall within the scope of § 1B1.3(a)(2), they fall within relevant conduct for purposes of § 4A1.2 only if they were incorporated in the guidelines calculation of the base offense level under § 2L1.2, specific offense characteristics, cross references, or adjustments to the instant offense of illegal reentry. An evaluation of § 2L1.2 shows that Defendants' convictions after unlawfully reentering the country are not incorporated in the offense level calculation.

### 3.    § 2L1.2

**[7]** Unlike continuous offenses included in § 3D1.2(d) (Groups of Closely Related Counts), the total amount of harm involved in illegal reentry does not vary based on the continuous nature of the offense. In *United States v. Carrasco*, 313 F.3d 750, 755-756 (2d. Cir. 2002), the Second Circuit concisely stated the harm involved in an illegal reentry offense. Regardless of the motive: "the 'harm' remains the illegal reentry." *Id.* The harm contemplated by the statute, then, is

completed at the time the defendant completes the actus reus of the offense, the voluntary illegal reentry without permission. *See United States v. Ayala*, 35 F.3d 423, 426 (9th Cir. 1994). Section 2L1.2 provides only one base offense level for unlawful entering or remaining in the United States. Under the Specific Offense Characteristics, however, the offense level is increased if the defendant reentered the country following deportation for certain crimes. The increase in punishment is not dependent on the purpose for the reentry, but "to reflect the greater culpability of an alien who illegally reenters after committing" previous crimes in this country. *Carrasco*, 313 F.3d at 756. For purposes of calculating the offense level, it is irrelevant what conduct the alien engages in after reentry, as the harm is already complete.[10] *See United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995) (noting that a § 1326 violation is "ordinarily complete as soon as the entry or attempt is made"); *cf. United States v. Marler*, 527 F.3d 874, 879 (9th Cir. 2008) (holding that "for criminal history calculation purposes, the escape was complete, even though [the defendant] continued to be on escape status"). Defendants' state law offenses, therefore, were not included in the calculation of the base offense level or specific offense characteristics. Because Defendants' state law offenses were not incorporated into the offense level calculation, and were not required to be considered relevant conduct under § 1B1.3(a)(2), the state law offenses were not "relevant conduct to the instant offense under the provisions of § 1B1.3." *See* § 4A1.2, cmt. n.1.

---

[10]A violation of § 1326, and its applicable guideline § 2L1.2, differs in its limited consideration of a defendant's other conduct and harm caused. For example, the guideline applicable to a violation of 18 U.S.C. § 844(h), for carrying an explosive device during the commission of a felony (at issue in *United States v. Ressam*, 128 S. Ct. 1858 (2008)), supercedes even the normal enhancements otherwise applicable, noting that the mere temporal requirement under the statute provides sufficient relatedness to the offense conduct. § 2K2.4(a) & cmt. n.4; *see also* § 2A4.1(b)(7) (increasing offense level if victim was kidnapped "during the commission of, or in connection with, another offense or escape").

**[8]** Our determination is consistent with the structure and interactions of the Guidelines, as well as the policy goal of avoiding overstating a defendant's criminal history. There is no overstatement involved in including Defendants' prior sentences in criminal history, as they were not included in the calculation of the offense level, based on properly applied guidelines. The application note contemplated the possibility that an offense could occur contemporaneously with the instant federal offense without necessarily falling under relevant conduct. Moreover, including Defendants' state convictions in the criminal history calculation preserves "the second fundamental element of the Guidelines calculus . . . based on an *offender characteristic*, namely criminal history." *United States v. Allen*, 488 F.3d 1244, 1256 (10th Cir. 2007) (noting that "prior acts that are not related to the offense of conviction may be considered because a 'defendant's prior record of past criminal conduct is directly relevant to' the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2)" (quoting U.S.S.G. § 4A intro cmt.)).[11] We affirm the district courts' assignment of criminal history points to Defendants' state law convictions.

---

[11]The importance of this secondary purpose is even more prevalent for violations of § 1326. Guideline § 2L1.2, application note 6, makes clear that prior convictions used in calculating a defendant's specific offense characteristic level are not excluded from consideration under criminal history. Defendants' interpretation of § 4A1.2, application note 1, by contrast, would specifically include these convictions as part of relevant conduct, excluding them from any prior sentence calculation. This is because under § 1B1.3(a)(4), "any other information specified in the applicable guideline," is included within relevant conduct used in determining specific offense characteristics. Section 2L1.2, in turn, includes certain prior convictions in its specific offense characteristics calculation, rendering it relevant conduct under § 1B1.3. Certainly the application note did not mean to include sentences received years earlier as "part of the instant offense." *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 63 ("There is no canon against using common sense in construing laws as saying what they obviously mean.").

Our decision is also consistent with the Fifth Circuit's approach in *United States v. Vargas-Garcia*, 434 F.3d 345 (5th Cir. 2005). *Vargas-Garcia* interpreted the same application note at issue here and held, under plain error review, that the continuing nature of a § 1326 violation did not preclude the district court from including other sentences in criminal history. *Id.* at 352. *Vargas-Garcia* focused on "the concept of separable prior offenses . . . based on 'different criminal conduct that harmed different societal interests.' " *Id.* at 350 (quoting *United States v. Beddow*, 957 F.2d 1330, 1339 (6th Cir. 1992)). The court did not want "the concealed and extended nature of [illegal reentry to] shield multiple and severable instances of unlawful conduct from their appropriate consequences at sentencing." *Id.* at 349 (internal citations omitted). This reasoning tracks the purpose of §§ 1B1.3(a)(2) and 3D1.2(d), outlined above. Where there is no difficulty identifying severable harms caused by multiple offenses, the goal of § 4A1.2 in preventing overstating a defendant's criminal history is not offended. For crimes committed after an alien unlawfully reenters, but before he or she is "found," there is no "pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing" merely because the crimes were technically contemporaneous. § 1B1.3 (background); *see also Marler*, 527 F.3d at 881 (holding that because the defendent "[did] not point to any evidence that his possession of [a] firearm occurred in conjunction with [his] robbery conspiracy," the district court did not err in including the sentence as part of criminal history rather than relevant conduct).

## B.   § 4A1.1(d) Assignment of Points

The district courts also assigned Cruz-Gramajo and Aguilar-Rodriguez points under U.S.S.G. § 4A1.1(d) for violating § 1326 while under a criminal justice sentence. Cruz-Gramajo and Aguilar-Rodriguez argue these rulings were erroneous because they were not under any sentences when they stepped across the border; instead, the sentences at issue

were for crimes committed after they reentered. Section 4A1.1(d) directs a district court to add two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." An application note equates "the instant offense" with "any relevant conduct." *See id.* cmt. n.4. Therefore, the question is whether Cruz-Gramajo and Aguilar-Rodriguez committed any "relevant conduct" to the § 1326 offense while under the sentences they received for committing crimes after illegally reentering.

Cruz-Gramajo preserved the issue at the district court and so we review the district court's determination de novo. *United States v. Grissom*, 525 F.3d 691, 696 (9th Cir. 2008). We review only for plain error in Aguilar-Rodriguez's case because he did not raise the issue below. See *United States v. Olano*, 507 U.S. 725, 732 (1993).

**[9]** Even assuming the district court erred in assigning two criminal history points to Cruz-Gramajo under § 4A1.1(d), we need not reach the issue. Cruz-Gramajo had seven criminal history points assigned based on his prior sentences; the district court's addition of the two § 4A1.1(d) points brought his total criminal history points to nine. Both seven and nine points result in a criminal history category of IV, *see* U.S.S.G. Ch.5, Pt. A, resulting in the same Guideline range even assuming error. Therefore, if any error was committed, which we do not decide, it was harmless. *See United States v. Rutledge*, 28 F.3d 998, 1003-1004 & n.7 (9th Cir. 1994).

**[10]** We hold that the district court did not err, much less plainly err, in its assignment of two criminal history points under § 4A1.1(d) to Aguilar-Rodriguez. In *Ayala*, we noted that "[t]o avoid being 'found in' the United States, a deported alien can either not re-enter the United States, or, if he has already re-entered the United States, he can leave." 35 F.3d at 425. Here, Aguilar-Rodriguez committed two separate DUI

offenses before he was "found" in the United States. Aguilar-Rodriguez's first DUI conviction was received in August 2005, after his unlawful reentry. In October 2005, his probation was revoked and a bench warrant was issued. According to § 4A1.1(d), cmt., n. 4, "[a] defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (e.g., a probation, parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence for the purposes of this provision . . . ." Thus, while under a criminal justice sentence for the first DUI, Aguilar-Rodriguez did not leave the country to avoid being "found." The district court did not plainly err in assigning the § 4A1.1(d) points to Aguilar-Rodriguez.

**AFFIRMED.**

---

PREGERSON, Circuit Judge, dissenting in part and concurring in part:

These three cases were tried separately before three different district courts. They were consolidated before us because they present common facts and issues. The events in each of the defendants' cases occurred in the same order: the defendants (1) were deported from the United States; (2) reentered the United States illegally; (3) committed state law crimes; and finally (4) were "found" by immigration officials.

I would find that each of the three district courts separately erred in assigning additional criminal history points to the defendants for state law offenses committed *after* the defendants illegally reentered the United States, but *before* each was "found" by immigration authorities. Furthermore, I would find that the district court erred in assigning two additional criminal history points to defendant Cruz-Gramajo for committing an 8 U.S.C. § 1326 offense "while under [another] criminal justice sentence." U.S.S.G. § 4A1.1(d).

Accordingly, I dissent entirely from the majority opinion's Section III A, "Criminal History Calculation," and also dissent in part from the majority opinion's Section III B, "§ 4A1.1(d) Assignment of Points."

## A.   Criminal History Calculation[1]

Under the Sentencing Guidelines, defendants are assigned criminal history points for prior sentences of imprisonment, provided those sentences satisfy certain requirements. *See* U.S.S.G. § 4A1.1. The Guidelines define a prior sentence as "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Pursuant to the Guidelines then, the district court may *not* assign criminal history points for any conduct that *was* part of the instant offense. *See id.* An application note to § 4A1.2 explains that "[c]onduct that is part of the instant offense means conduct that is *relevant conduct* to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2 cmt.1 (emphasis added). Under U.S.S.G. § 1B1.3(a)(1), "relevant conduct" includes "all acts and omissions committed . . . by the defendant . . . that occurred *during the commission of* the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . . " (Emphasis added).

The crime of being "found" in the United States pursuant to § 1326 is considered an ongoing offense, because it "commences with the illegal entry, but is not completed until discovery" by immigration officials. *United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1061 (9th Cir. 2000). Here, the defendants each committed state law offenses after their ille-

---

[1]I have given the two sections of this dissent the same titles as the corresponding sections of the majority opinion. But both Section A and Section B of this dissent (and the majority opinion) concern criminal history calculations.

gal re-entry, but before being "found" by immigration officials. Because § 1326 is an ongoing offense, the defendants' state law offenses took place "during the commission of" the defendants' § 1326 violations. *See* U.S.S.G. § 1B1.3(a)(1). Accordingly, I would find that the district courts should have treated the state law offenses as "relevant conduct," as defined by U.S.S.G. § 1B1.3, and not as criminal history, because the state law offenses took place "during the commission of" the § 1326 violations.

The state law offenses should be considered "relevant conduct" in relation to the § 1326 offenses based on the plain meaning of the word "during" in § 1B1.3(a)(1). Under the rules of statutory construction, "the plain meaning of unambiguous language in a guideline provision controls." *United States v. Valenzuela*, 495 F.3d 1127, 1133 (9th Cir. 2007). I agree with the defendants that the plain meaning of the word "during" in the definition of "relevant conduct" in U.S.S.G. § 1B1.3(a)(1) indicates a temporal relationship, and nothing more, between the offenses. The term "during" simply indicates a passage of time. Though asserted by the majority, it is infeasible that by solely employing the word "during," Congress intended that U.S.S.G. § 1B1.3(a)(1) was meant to encompass conduct that was both "during" *and* "in connection with" the offense of conviction.

The Supreme Court's ruling in *United States v. Ressam*, 128 S. Ct. 1858, 1860-62 (2008), supports the defendants' plain meaning argument of the word "during." Though the Court was addressing a different statute, 18 U.S.C. § 844(h)(2),[2] *Ressam* involved statutory language identical to the Guidelines text at issue in this case. *See id*. at 1860. The defendant

---

[2]18 U.S.C. § 844(h)(2) requires that "[w]hoever carries an explosive *during the commission of* any felony which may be prosecuted in a court of the United States . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years." (emphasis added).

in *Ressam* was convicted of making a false statement on a customs form, a felony, and of carrying an explosive "during the commission of" that felony in violation of 18 U.S.C. § 844(h)(2).**³** *Id.* at 1860. The government presented no evidence to show that carrying the explosive in any way facilitated the false statement. Our court concluded that the phrase "during the commission of" required both a temporal connection and "a relational element," and vacated the § 844(h)(2) conviction accordingly. *United States v. Ressam*, 474 F.3d 597, 603 (9th Cir. 2007), *rev'd*, 128 S. Ct. 1858 (2008).

The Supreme Court reversed our court's decision, and in so doing rejected our interpretation of the word "during." *Ressam*, 128 S.Ct. at 1862. The Court instead held that the plain meaning of "during" did *not* include an "in relation to" requirement:

> There is no need to consult dictionary definitions of the word "during" in order to arrive at the conclusion that respondent engaged in the precise conduct described in § 844(h)(2). *The term "during" denotes a temporal link*; that is surely the most natural reading of the word as used in the statute. Because respondent's carrying of the explosives *was contemporaneous with* his violation of § 1001, he carried them "during" that violation.

*Id.* at 1861 (emphasis added). I believe we should follow the Supreme Court's analysis and similarly interpret the word "during" in § 1B1.3(a)(1) to signify a temporal link only.

Additionally, it seems that by employing the majority opinion's interpretation of the word "during," luck will become an inextricable element of our sentencing process. If a defendant

---

**³**The defendant in *Ressam* entered the U.S. with a trunk full of explosives. *Ressam*, 128 S. Ct. at 1860. He then falsely filled out a customs form. *Id.* Later, authorities searched his car and found the explosives. *Id.*

illegally reenters the country but is not "found" for many years, and in the meantime commits a number of state law offenses, then his criminal history point total under the Sentencing Guidelines will increase. This defendant will serve a much longer sentence for his § 1326 offense compared to the sentence he would serve for the *same offense* if "found" by immigration authorities the day he illegally reentered. Following the majority opinion's view, criminal history points will be allocated based on the arbitrary actions of immigration authorities rather than the actions of defendants. I believe we should be punishing defendants *for their own actions*, and not the actions of immigration officials.

I further find that each district court's error in interpreting the Guidelines was not harmless. The sentence ranges of all three defendants increased *because of their enhanced criminal history categories.* For example, defendant Cruz-Gramajo received four additional criminal history points for two state law crimes he committed after he illegally re-entered to the United States. The four additional points increased his total to nine. The four additional criminal history points pushed him from Category III to Category IV, increasing his Guidelines range from 46-57 months to 57-71 months. The district court ultimately sentenced Cruz-Gramajo to 57 months of incarceration. The sentence ranges of Aguilar-Rodriguez and Pulido similarly increased. Given that the binding plea agreements of all three defendants mandated sentences at the low end of the appropriate Guidelines range, there is no doubt that the errors were not harmless. Accordingly, I dissent from Part III A of the majority opinion.

## B.   § 4A1.1(d) Assignment of Points

I concur in the majority opinion's determination that the district court accurately assigned defendant Aguilar-Rodriguez two additional criminal history points under U.S.S.G. § 4A1.1(d). Though not addressed by the majority opinion, under the de novo standard I would hold that the dis-

trict court's assignment of two additional criminal history points to defendant Cruz-Gramajo pursuant to U.S.S.G. § 4A1.1(d) was misguided. Section 4A1.1(d) directs a district court to add two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, [or] imprisonment . . . . " The district court assigned these two additional points to Cruz-Gramajo pursuant to § 4A1.1(d) because immigration authorities "found" him in April 2007, when he was serving time in the Los Angeles County Jail for grand theft and burglary.

I believe the district court's reading of § 4A1.1(d) leads to absurd results in sentencing Cruz-Gramajo for his § 1326 illegal reentry offense because Cruz-Gramajo was incarcerated when he was "found" by immigration authorities.[4] The majority opinion quotes *United States v. Ayala*, 35 F.3d 423, 425 (9th Cir. 1994), that "[t]o avoid being 'found in' the United States, a deported alien can either not re-enter the United States *or, if he has already re-entered the United States, he can leave*." (Emphasis added). Cruz-Gramajo, however, was in jail, and so could not leave the United States to avoid being "found."[5]

By assigning two additional points to Cruz-Gramajo pursuant to § 4A1.1(d) in addition to the four criminal history points the court assigned pursuant to § 4A1.2, the district court effectively punished Cruz-Gramajo three times for the same grand theft and burglary offenses he committed in 2006:

---

[4]I agree with the majority that the district court properly assigned criminal history points to Aguilar-Rodriguez under U.S.S.G. § 4A1.1(d) for violating § 1326 while under a criminal justice sentence. Aguilar-Rodriguez was not imprisoned when he was "found" by immigration authorities, and thus could have left the United States to avoid violating § 1326.

[5]We did not address this issue in *United States v. Lomeli-Mences*, ___ F.3d ___, No. 07-50452, 2009 WL 1476976 (9th Cir. May 28, 2009), because it did not come to our attention in that case.

(1)   Cruz-Gramajo served jail sentences imposed by a California state court for his 2006 grand theft and burglary offenses.

(2)   Because Cruz-Gramajo was "found" by immigration authorities *after* he was sentenced for grand theft and burglary, the district court indulged in the legal fiction that Cruz-Gramajo committed the illegal reentry offense *after* he committed the grand theft and burglary offenses. The district court thus assigned four additional criminal history points for the grand theft and burglary convictions in its calculation of Cruz-Gramajo's illegal reentry sentence.[6]

(3)   Finally, because Cruz-Gramajo was "found" by immigration authorities while serving jail time for grand theft and burglary, the district court employed a further legal fiction: that Cruz-Gramajo illegally reentered the United States *while serving a jail sentence for grand theft and burglary*. Thus, the district court further punished Cruz-Gramajo with two additional criminal history points.

I find that employing such legal fictions is illogical and unfair in Cruz-Gramajo's case. Accordingly, I disagree with the district court's assessment of two additional criminal history points for "committ[ing] the [illegal reentry] offense while under [another] criminal justice sentence."[7] U.S.S.G. § 4A1.1(d).

---

[6]This issue is discussed in detail in Section A of this dissent.

[7]I also disagree with the four criminal history points the district court assigned to Cruz-Gramajo pursuant to U.S.S.G. § 4A1.1, as I explained in Section A of this dissent.

The majority contends that because the two points subtracted from Cruz-Gramajo's criminal history point total would not change his criminal history category (it would remain at IV), any error the district court may have made in assigning points to Cruz-Gramajo pursuant to U.S.S.G. § 4A1.1(d) would be harmless. But I disagree. As I explained in Section A of this dissent, Cruz-Gramajo should not have been assigned four criminal history points for the state law offenses he committed after he re-entered the United States but before he was "found." His criminal history total of nine points should have been reduced by four points, to a total of five points, thereby reducing his criminal history category from Category IV to Category III. Then, if an additional two points were subtracted because the district court erred in assigning Cruz-Gramajo two additional criminal history points under U.S.S.G. § 4A1.1(d), Cruz-Gramajo's criminal history category would be further reduced to Category II, and his sentencing range reduced to 41-51 months. Instead, the district court calculated a sentencing range of 57-71 months. Cruz-Gramajo's substantive rights are affected here, when both issues on appeal are viewed together. Accordingly, I dissent from the majority's treatment of defendant Cruz-Gramajo on this issue, but concur in its holding regarding defendant Aguilar-Rodriguez.