# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

URIEL RIVERA-GOMEZ,
            *Defendant-Appellant.*

No. 08-10480

D.C. No.
1:08-CR-00177-
OWW-1

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted
February 8, 2010—San Francisco, California

Filed December 6, 2010
Amended February 2, 2011

Before: Alfred T. Goodwin, Marsha S. Berzon and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Concurrence by Judge Goodwin

**COUNSEL**

Daniel J. Broderick, Federal Defender, and Douglas J. Beevers, Assistant Federal Defender, Fresno, California, for the defendant-appellant Rivera-Gomez.

Lawrence G. Brown, United States Attorney, and Ian L. Garriques, Assistant United States Attorney, Fresno, California, for plaintiff-appellee the United States.

---

## ORDER

The opinion filed on December 6, 2010 and published at 626 F.3d 1129, is amended as follows.

The text in footnote 9 appearing on page 1136 should be deleted and replaced with the following language:

> Though the concurrence observes that the district court's error may have been harmless, the district court has not made findings regarding Rivera-Gomez's intent or calculated potential upward adjustments relating to victim, role, and obstruction of justice. *See United States v. Lococo*, 514 F.3d 860, 865-66 (9th Cir. 2008). Moreover, there is nothing in the record to suggest that the district court would reach an equivalent or more severe sentence on remand. *See United States v. Ankeny*, 502 F.3d 829, 841 (9th Cir. 2007). Because we cannot say with any degree of confidence that the district court's error was harmless, we remand for resentencing. Having remanded on this basis, we need not reach Rivera-Gomez's arguments regarding other alleged sentencing errors.

Additionally, the concurrence appearing on pages 1136-37 is deleted and replaced by the concurrence attached to this order.

As the deadline for petitions for rehearing and rehearing en banc has passed, no petitions for rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

---

## OPINION

IKUTA, Circuit Judge:

In calculating the defendant's sentencing range under the U.S. Sentencing Guidelines, the district court counted the defendant's prior state resisting arrest conviction as part of his criminal history, *see* § 4A1.1, rather than as part of the offense level for his crime of conviction, *see* § 2L1.2.[1] Because a district court should account for a prior state conviction as part of the offense level calculation where that conviction was for conduct that occurred in the course of the defendant's attempt "to avoid detection or responsibility" for the crime of conviction, § 1B1.3(a)(1)(A), we vacate the defendant's sentence and remand for resentencing.

### I

Uriel Rivera-Gomez, a Mexican citizen, gained legal status in the United States through an amnesty program in the late 1980s. He was subsequently convicted of attempted murder in 1992. In July 2000, he was convicted for driving under the influence of alcohol. As a result of these convictions, he lost his legal status and was deported in January 2001. Sometime thereafter, Rivera-Gomez returned illegally to the United States, and in July 2003, he was convicted of misdemeanors for making a threat with intent to terrorize and for battery.

---

[1]The Guidelines state that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," § 1B1.11(a), unless use of that Manual "would violate the *ex post facto* clause of the United States Constitution," § 1B1.11(b)(1). Because there is no ex post facto issue in this case, we use the 2007 edition of the Guidelines Manual, which was in effect on October 27, 2008, at the time of Rivera-Gomez's sentencing.

In March 2005, Visalia police officers were investigating reports of drug use by individuals in front of a certain residence when they noticed a modified shotgun inside a vehicle. When officers approached Rivera-Gomez, who was among those standing in front of the house, Rivera-Gomez pushed one of them aside and fled into the residence. Officers followed in pursuit, but Rivera-Gomez was able to escape after attempting to strike them. Two weeks later, officers located Rivera-Gomez at his home. Again, Rivera-Gomez attempted to escape, this time by kicking a hole through the drywall and hanging from the ceiling rafters, but officers were eventually able to restrain and arrest him after deploying tear gas and a Taser.

Rivera-Gomez was convicted in state court of the state felony of resisting arrest, for which he served three years in state prison. Directly before his release, in May 2008, the federal government charged Rivera-Gomez with being a deported alien found in the United States after illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2).[2] Rivera-Gomez pleaded

---

[2] 8 U.S.C. § 1326 states in relevant part:

(a) In general

Subject to subsection (b) of this section, any alien who—

> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, . . .

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

> . . .
>
> (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both
> . . . .

guilty to the charge but objected to the district court's application of the Guidelines, because the court had included his prior state sentence for resisting arrest as part of the criminal history calculation. The district court denied his objection, and Rivera-Gomez timely appealed.

II

**[1]** To assist in explaining Rivera-Gomez's objection to the district court's sentencing calculation, we set forth a brief overview of the procedure that a district court must apply to determine the Guidelines' range for a § 1326 conviction. When sentencing a defendant for a § 1326 conviction, a district court must calculate both the number of points associated with the defendant's offense level and the number of points associated with the defendant's criminal history. Section 1B1.1 provides step-by-step instructions for this process. The district court must first determine the correct offense guideline section applicable to the offense of conviction, which in this case is § 2L1.2 (Unlawfully Entering or Remaining in the United States).[3] *See* § 1B1.1(a).

---

[3]Section 2L1.2, Unlawfully Entering or Remaining in the United States, states the following:

  (a) Base Offense Level: 8

  (b) Specific Offense Characteristic

    (1) Apply the Greatest:

    If the defendant previously was deported, or unlawfully remained in the United States, after—

    (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels;

    (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;

The Guidelines next direct the court to "[d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed." § 1B1.1(b). In this case, the § 2L1.2(a) guideline provides a single base offense level of eight points for violations of § 1326, and sets forth "Specific Offense Characteristics" that require the district court to increase the offense level if the defendant was previously deported or unlawfully remained in the United States after being convicted of specified felonies.[4] Section 1B1.3 (Relevant Conduct) explains that the district court is to determine the specific offense characteristics on the basis of whether they are "acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, *or in the course of attempting to avoid detection or responsibility for that offense*." § 1B1.3(a)(1)(A) (emphasis added).

Once the base offense level and special offense characteristics are determined, the district court must calculate applicable upward adjustments, including those relating to victim, role, and obstruction of justice. *See* § 1B1.1(c). Potentially relevant here, a court may impose an upward adjustment if the victim was a government officer, *see* § 3A1.2(a), if the defendant assaulted a law enforcement officer "in a manner creat-

---

(C) a conviction for an aggravated felony, increase by 8 levels;

(D) a conviction for any other felony, increase by 4 levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

[4]Section 2L1.2 does not set forth any cross references or any applicable special instructions.

ing a substantial risk of serious bodily injury," *see* § 3A1.2(c)(1), or if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," *see* § 3C1.2. Finally, the district court must calculate any applicable downward adjustment for the defendant's acceptance of responsibility. *See* § 1B1.1(e).

After the district court has calculated the offense level, it must determine the defendant's criminal history category pursuant to Chapter 4(A). *See* § 1B1.1(f). The court makes this calculation by adding points for each qualifying prior sentence according to the instructions in § 4A1.1.[5] The term

---

[5]Section 4A1.1, Criminal History Category, provides:

The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.

(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

(e) Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.

(f) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was counted as a single sentence, up to a total of 3 points for this item.

The Guidelines allow adjustments to be made if a defendant is a career offender, *see* § 4B1.1, but no such adjustments are applicable in this case.

"prior sentence" is defined in § 4A1.2(a) to mean "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct *not part of the instant offense*." § 4A1.2(a) (second emphasis added). The commentary to this section of the Guidelines defines "conduct that is part of the instant offense" to mean "conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." § 4A1.2 cmt. n.1.

**[2]** In sum, when a defendant has received a prior sentence, the district court must determine whether to take the prior sentence into account in either the base offense level calculation or the criminal history calculation. To do so, the district court must determine whether the conduct underlying that prior sentence is relevant to the crime of conviction, as defined in § 1B1.3(a)(1)(A). If the conduct underlying the prior sentence constitutes relevant conduct to the crime of conviction, then it must be included in the offense level calculation (i.e., it is accounted for as part of the specific offense characteristics), and cannot be included in the criminal history calculation even if the conduct resulted in a criminal conviction.[6] *See* § 4A1.2 cmt. n.1. On the other hand, if the conduct underlying the prior sentence is not relevant to the crime of conviction, then the prior sentence must be included as part of the defendant's criminal history score. *See* § 4A1.1. The interlocking definitions of relevant conduct and prior sentence ensure "that a defendant's criminal history is not overstated" by counting the same conduct in the offense level calculation and again in the criminal history calculation. *United States v. Cruz-Gramajo*, 570 F.3d 1162, 1170 (9th Cir. 2009).

---

[6]There are exceptions to this principle. For example, prior convictions may be considered in determining the special offense characteristics under § 2L1.2, and still be counted as part of criminal history. *See* § 2L1.2 cmt. n.6.

### III

We now apply the framework described above to this case. We have jurisdiction pursuant to 18 U.S.C. § 3742. We review the district court's interpretation of the Guidelines de novo, its findings of fact for clear error, and its application of the Guidelines to the facts of this case for abuse of discretion. *Cruz-Gramajo*, 570 F.3d at 1167. In considering a district court's application of the Guidelines to undisputed facts, we review the district court deferentially, acknowledging that "the district court is in a better position than the appellate court to decide whether a particular set of individual circumstances" meets the Guidelines' criteria, *Buford v. United States*, 532 U.S. 59, 64 (2001), and understanding "the limited value of uniform court of appeals precedent" regarding such "fact-bound" legal issues, *id.* at 66.

In sentencing Rivera-Gomez, the district court assigned eight points for Rivera-Gomez's base offense level. *See* § 2L1.2(a). After considering "special offense characteristics," the district court increased the offense level by sixteen points because Rivera-Gomez reentered the country after being convicted of attempted murder, which is a crime of violence. *See* § 2L1.2(b)(1)(A)(ii). The district court did not make any upward adjustments for victim, role, or obstruction of justice, *see* § 1B1.1(c), but reduced Rivera-Gomez's offense level two points by applying a downward adjustment for acceptance of responsibility. *See* § 3E1.1(a).

With respect to the criminal history calculation, the district court determined that Rivera-Gomez had a total of twelve criminal history points, including three points for his state resisting-arrest conviction.

As noted above, Rivera-Gomez argued that the state resisting-arrest conviction could not be included in the criminal history calculation, because he resisted arrest with the intent of avoiding detection for his crime of illegal reentry.

The district court rejected this argument, holding that the resisting-arrest conduct must be considered separately from the illegal reentry offense because resisting arrest "creates an exceedingly dangerous situation that really compounds and aggravates the nature of the crimes that were initially under investigation." Relying on a Fifth Circuit case, *United States v. Vargas-Garcia*, 434 F.3d 345 (5th Cir. 2005), the district court concluded that the state resisting-arrest offense was properly included as part of Rivera-Gomez's criminal history, and that Rivera-Gomez's intent in resisting arrest was irrelevant.

**[3]** We disagree with the district court's reasoning. Under the plain language of the Guidelines, *United States v. Valenzuela*, 495 F.3d 1127, 1133 (9th Cir. 2009), conduct that occurred "in the course of attempting to avoid detection or responsibility" for the crime of conviction constitutes relevant conduct, and it should therefore be included in the specific offense characteristics. § 1B1.3(a)(1)(A). Moreover, if the conduct underlying the state conviction constitutes relevant conduct, then it cannot be considered a "prior sentence" for purposes of calculating criminal history points. § 4A1.2 cmt. n.1. Although Rivera-Gomez's resisting-arrest conduct occurred long after the reentry offense took place, nothing in the Guidelines establishes that conduct ceases to be relevant after a specified period of time. Therefore, if Rivera-Gomez resisted arrest in order to "avoid detection or responsibility" for the illegal reentry offense (as he now claims), and there is no other basis for holding that the resisting-arrest offense is not relevant conduct to the crime of conviction, the district court erred in accounting for the conduct as a prior sentence, rather than as part of the offense level.

In reaching this conclusion, we join the only other circuit that has directly addressed this issue. *See United States v. White*, 335 F.3d 1314, 1319-20 (11th Cir. 2003). In *White*, an alien arrested on drug charges gave a false name and identification to the state police. *Id.* at 1315-16. After the state dis-

covered his true identity, the alien was convicted and sentenced for giving false information to a police officer. *Id.* at 1316. Immediately after the alien received his state sentence, he was charged and subsequently pleaded guilty to a § 1326 offense for being found in the United States after his 1987 and 1991 deportations. *Id.*

In calculating the criminal history for the alien's sentence, the district court included two criminal history points for the state false-information conviction, on the ground that the conduct underlying that conviction was not part of the § 1326 offense. *Id.* The Eleventh Circuit determined that the district court had erred, noting that "in many circumstances," an alien's false statement to the police "could constitute an action taken to avoid detection" for the offense of being found in the United States in violation of § 1326(a), the same offense for which Rivera-Gomez was convicted. *Id.* at 1320.**[7]** Because the record established that the alien gave a false name to avoid detection or responsibility for his reentry offense, the court vacated the alien's sentence and remanded for resentencing. *Id.* at 1320-21.

Neither our opinion in *Cruz-Gramajo*, 570 F.3d 1162, relied on by the government, nor the Fifth Circuit's reasoning in *Vargas-Garcia*, 434 F.3d 345, the case on which the district court relied, are contrary to our conclusion that a resisting-arrest offense can be relevant conduct for a § 1326 reentry offense. Both of these cases addressed a different issue: whether *all* crimes committed by an alien from the time of the unlawful reentry to the time of arrest for committing a § 1326 reentry offense constitute relevant conduct, and there-

---

**[7]**Both Rivera-Gomez and the alien in *White* were charged with "being found" in the United States after a deportation order, in violation of § 1326(a). *See* 335 F.3d at 1316 n.1 (quoting § 1326(a)). Although *White* observed that the government's argument that the alien's offenses were unrelated and arose from two different courses of action "would be convincing if the government had . . . indicted White of *entering* the U.S.," *id.* at 1320, that issue is not before us here.

fore must be excluded from the criminal history calculation.[8] As explained in *Cruz-Gramajo*, this theory was based on the following syllogism: (1) a violation of § 1326 "is considered a continuing offense that extends from the moment of illegal reentry until discovery by immigration officials," 570 F.3d *at 1168 (citing United States v. Reyes-Pacheco*, 248 F.3d 942, 946 (9th Cir. 2001)); (2) the explanation of relevant conduct in § 1B1.3 includes any conduct "that occurred during the commission of the offense of conviction," *id.*(emphasis omitted); (3) therefore, the defendants' "intervening state offenses occurred 'during' their § 1326 offenses as a temporal matter, and this temporal relationship is sufficient to deem the state offenses 'relevant conduct,' thereby precluding the district court from considering the convictions as part of their criminal history calculation." *Id.* at 1168-69 (footnote omitted). We rejected this argument based in part on our conclusion that the Guidelines did not contemplate that the defendants' state convictions would be accounted for in the Guidelines' calculation of the offense level under § 2L1.2. *See id.* at 1172-74. Accordingly, the district court's decision to include the state convictions in the criminal history calculations was consistent with the Guidelines' policy goals of avoiding either overstating or understating a defendant's criminal history. *Id.*

The Fifth Circuit reached a similar conclusion in *Vargas-Garcia*, 434 F.3d 345. In that case, an alien was arrested and convicted for a state resisting-arrest offense after he had illegally reentered the country but before he had been arrested for that § 1326 offense. *Id.* at 346. The alien argued at the sen-

---

[8]Although one of the defendants in *Cruz-Gramajo* was convicted under state law for evading a police officer during a traffic stop, 570 F.3d at 1166, an offense that is similar to Rivera-Gomez's state resisting-arrest offense, *Cruz-Gramajo*'s holding was focused solely on the question whether a "district court [is precluded] from considering [state] convictions as part of [a defendant's] criminal history calculation" when the state offenses were committed during a § 1326 offense," *id.* at 1168-69. The court in *Cruz-Gramajo* did not consider Rivera-Gomez's argument that the state offense was committed to avoid detection for the § 1326 offense.

tencing stage for the § 1326 reentry conviction that his resisting-arrest offense was relevant conduct for the illegal reentry offense, "since his resisting arrest occurred during the commission of or in the course of attempting to avoid detection or responsibility for his illegal reentry." *Id.* at 347. The court did not address the question whether resisting arrest "to avoid detection or responsibility" for the crime of illegal reentry constitutes relevant conduct under § 1B1.3(a)(1)(A), but rather focused solely on the alien's continuing offense argument. In rejecting this argument, the court reasoned that although illegal reentry is a continuing offense, "the concealed and extended nature of this offense cannot shield multiple and 'severable instances of unlawful conduct' from their appropriate consequences at sentencing." *Id.* at 349 (quoting *United States v. Banashefski*, 928 F.2d 349, 352 (10th Cir. 1991)). Further, the court concluded that the resisting-arrest offense was separable from the illegal reentry offense because the prior offense was "based on 'different criminal conduct that harmed different societal interests.' " *Id.* at 350 (quoting *United States v. Beddow*, 957 F.2d 1330, 1339 (6th Cir. 1992)). Accordingly, the Fifth Circuit held that the district court did not err in counting the alien's resisting-arrest offense as part of his criminal history. *Id.* at 352.

In this case, Rivera-Gomez does not raise the continuing offense theory, and so *Cruz-Gramajo* and *Vargas-Gomez* are not directly applicable. Nor is the concern expressed in *Cruz-Gramajo* regarding the risk of undercounting a defendant's criminal conduct applicable here: treating the state-resisting arrest conviction as relevant conduct rather than criminal history will not necessarily lead to an understatement in the Guidelines' calculation, because the conduct can be accounted for in the offense level. For example, if the district court determines that the conduct underlying Rivera-Gomez's resisting-arrest conviction was intended to avoid detection for the reentry offense, the district court would have to recalculate the offense level determination and, as noted above, could consider imposing an upward adjustment under § 3A1.2(a)

(victim was a government officer), § 3A1.2(c)(1) (defendant assaulted a law enforcement officer "in a manner creating a substantial risk of serious bodily injury"), or § 3C1.2 (defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer").

IV

**[4]** Because the district court erred in determining that Rivera-Gomez's state resisting-arrest conviction could not be "relevant conduct" under § 1B1.3(a)(1)(A) as a matter of law, even if Rivera-Gomez intended to "avoid detection or responsibility" for his reentry offense, it did not make a factual finding regarding Rivera-Gomez's intent in resisting arrest. Nor is his intent clear from the record. Consequently, we vacate Rivera-Gomez's sentence and remand to the district court for proceedings consistent with this opinion.[9]

**VACATED and REMANDED.**

GOODWIN, Circuit Judge, concurring:

I concur in the result and concur in the opinion. I write only to point out the folly of this appeal and the judicial ineffi-

---

[9]Though the concurrence observes that the district court's error may have been harmless, the district court has not made findings regarding Rivera-Gomez's intent or calculated potential upward adjustments relating to victim, role, and obstruction of justice. *See United States v. Lococo*, 514 F.3d 860, 865-66 (9th Cir. 2008). Moreover, there is nothing in the record to suggest that the district court would reach an equivalent or more severe sentence on remand. *See United States v. Ankeny*, 502 F.3d 829, 841 (9th Cir. 2007). Because we cannot say with any degree of confidence that the district court's error was harmless, we remand for resentencing. Having remanded on this basis, we need not reach Rivera-Gomez's arguments regarding other alleged sentencing errors.

ciency now inherent in the review of some sentencing appeals.

As an initial point, Rivera-Gomez's original sentence is supported by the Guidelines, even if his conviction for resisting arrest is completely removed from the calculation. Dropping the three criminal history points originally added for that conviction, Rivera-Gomez's total criminal history points would be nine, which supports a criminal history category of IV. *See* U.S.S.G., Ch. 5, Part A (Sentencing Table). In combination with the original offense level of twenty-two—which reflected no upward adjustments for his conduct in resisting arrest—these calculations support a custodial sentence between sixty-three and seventy-eight months under the Guidelines. *Id.* Accordingly, Rivera-Gomez's original sentence of seventy-seven months was within the Guidelines, even with no adjustments made for his resisting-arrest conviction.

It is possible the district court could sentence Rivera-Gomez towards the low-end of this new Guidelines range—as it did under its initial higher calculation—resulting in a new sentence below seventy-seven months. It would seem more likely, however, that on remand defendant will face a higher Guidelines range, which could potentially result in a *longer* sentence than the one first imposed. First, it seems fairly obvious that there will be at least a three-level upward adjustment of the offense under § 3A1.2(a), as the victim of the resisting-arrest conduct was a government officer. This adjusted offense level of twenty-five would result in a Guidelines range of 84 to 105 months. Two additional upward adjustments are also possible. *See* §§ 3A1.2(c)(1) and 3C1.2. If all three of these adjustments are made, Rivera-Gomez's offense level could reach thirty-three, resulting in a Guidelines range of 188 to 235 months. Accordingly, the result of this "successful appeal" could well be that Rivera-Gomez's sentence increases, potentially as much as tripling.

Despite knowing all this, we are unable under current Ninth Circuit precedent to affirm the sentence originally given by the district court and to dispense with this case. In *U.S. v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc), this Court held remand was necessary for significant procedural error, which includes any incorrect calculation of the sentencing range.

The Supreme Court has instructed, however, that remand for resentencing must pass a harmless error test. *Williams v. U.S.*, 593 U.S. 193, 202 (1992). "[R]emand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed." *Id. Williams* remains good law. *See, e.g., U.S. v. Smith*, 561 F.3d 934, 942 (9th Cir. 2009). Mandatory remand for even a harmless mistake in calculating the Guidelines makes even less sense now that the Guidelines are purely advisory. *See United States v. Booker*, 543 U.S. 220, 244-45, 259-60 (2005).

As the government is not seeking a higher sentence, this court could easily conclude that the error in determining the sentencing range here was harmless. It would be sadly ironic for Rivera-Gomez to win his appeal and then be given a longer sentence, possibly much longer. For the sake of judicial efficiency and good common sense, it seems to me that the procedural error trigger of *Carty* needs to be refashioned to admit the harmless error standard of *Williams*.