NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-4383
_____


UNITED STATES OF AMERICA

v.

GARFIELD BUTLER,
also known as Douglas K. Lindsay,

Garfield Butler,
                                        *Appellant*
_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-11-cr-00097-001)
District Judge:  Honorable Joseph E. Irenas


_____


Submitted Under Third Circuit LAR 34.1(a)

(Submitted July 9, 2013)

Before: GREENAWAY, JR., SLOVITER, and BARRY, Circuit Judges

(Opinion Filed: July 19, 2013)


_____


OPINION
_____

SLOVITER, Circuit Judge.

Garfield Butler appeals the sentence imposed by the District Court following his guilty plea to illegal reentry in violation of 8 U.S.C. § 1326. For the reasons that follow, we will vacate the sentence and remand to the District Court for resentencing.[1]

## I.

Butler is a native and citizen of Jamaica who came to the United States as a teenager and was deported in 2006, after serving a fourteen-year sentence for drug trafficking. Shortly thereafter, he returned to this country. In 2010, Butler was pulled over for a traffic violation in New Jersey. He presented false identification documents to the officer, but his true identity was quickly discovered. Butler was charged with the New Jersey offense of exhibiting false documents as proof of identification, to which he pled guilty. The federal government then indicted Butler for illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). Butler pled guilty to that offense as well, and was sentenced to forty-six months' imprisonment and a three-year term of supervised release. He raises two issues on appeal.

## II.

Butler first alleges that the District Court erred in imposing a term of supervised release pursuant to the 2010 U.S. Sentencing Guidelines Manual ("Guidelines"), when

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231; we have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

the 2011 Guidelines were applicable. Because Butler did not object to supervised release at sentencing, we may intervene only if the District Court committed a plain error that affected Butler's substantial rights and undermined "the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks omitted); Fed. R. Crim. P. 52(b).

The 2010 Guidelines directed sentencing courts to order a term of supervised release whenever they imposed a prison sentence of more than one year. *See* U.S.S.G. § 5D1.1 (2010). Butler's pre-sentencing report was written on the basis of the 2010 Guidelines and cited § 5D1.1. Effective November 1, 2011, however, that provision was amended to include the caveat that

> [t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.

U.S.S.G. § 5D1.1(c).[2] In Butler's case, supervised release was not required by statute, *see* 8 U.S.C. § 1326; 18 U.S.C. § 3583, and Butler faced deportation after imprisonment,

---

[2] The commentary provides further explanation:

> Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.

*see* 8 U.S.C. §§ 1227(a)(2)(A)(iii); 1101(a)(43)(B). The record suggests that, at the time of sentencing, removal proceedings were already underway.

Sentencing courts must apply the guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4)(A)(ii); *United States v. Wood*, 486 F.3d 781, 790 (3d Cir. 2007). In addition, they must consider, among other sentencing factors, "any pertinent policy statement" by the Sentencing Commission that is "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(5). On the date of Butler's sentencing – November 30, 2011 – the 2011 Guidelines were in effect, but there is no indication that the District Court was aware of the change to § 5D1.1. The Court simply imposed a term of supervised release without discussion. The government concedes that it did so on the basis of the 2010 Guidelines, and that this was plain error. The government argues, however, that the error did not affect Butler's substantial rights.

We cannot agree. It is true that the District Court could still have imposed a term of supervised release pursuant to the 2011 Guidelines upon a finding that Butler's case justified "an added measure of deterrence and protection." U.S.S.G. § 5D1.1(c) cmt. n.5; *see also United States v. Dominguez–Alvarado*, 695 F.3d 324, 329-30 (5th Cir. 2012) (upholding imposition of supervised release pursuant to § 5D1.1(c) so long as sentencing court provides "particularized explanation"). But the District Court made no such

---

U.S.S.G. § 5D1.1 cmt. n.5.

4

finding.[3]  As we have noted before, "[i]t is difficult to conclude that a District Court *would have* reached the same result in a given case merely because it *could have* reasonably imposed the same sentence on a defendant." *United States v. Vazquez-Lebron*, 582 F.3d 443, 447 (3d Cir. 2009).  For that reason, procedural errors in sentencing are "seldom harmless," and presumptively affect a defendant's substantial rights even if the correct application of the Guidelines might produce the same result. *Id*.

With respect to the final step of plain error analysis, "we will generally exercise our discretion to recognize a plain error in the (mis)application of the Sentencing Guidelines." *United States v. Irvin*, 369 F.3d 284, 292 (3d Cir. 2004).  Because the District Court plainly erred in imposing supervised release pursuant to the 2010 Guidelines, and may have done otherwise on consideration of § 5D1.1(c) (2011), we will remand for the District Court to determine whether a term of supervised release is warranted.

## III.

Secondly, Butler alleges that the District Court erred by including his New Jersey false-identification conviction in his criminal history calculation, rather than considering it as conduct "relevant" to his reentry offense under Guidelines § 1B1.3(a)(1).  In particular, Butler challenges the District Court's legal determination that "relevant conduct" under § 1B1.3(a)(1) requires temporal proximity.  Because Butler contests the

---

[3] On the contrary, the contrast between the District Court's reflexive imposition of supervised release and its thoughtful analysis of every other issue at sentencing is strong evidence that the Court did not consider whether supervised release was necessary.

District Court's general construction of the Guideline, independent of the particular facts of his case, our review is plenary. *See United States v. Richards*, 674 F.3d 215, 218 (3d Cir. 2012); *United States v. Abrogar*, 459 F.3d 430, 433-36 (3d Cir. 2006).[4]

To calculate a defendant's sentencing range pursuant to the Guidelines, a sentencing court must make two central determinations:  the "offense level" and defendant's criminal history category.  *See* U.S.S.G. §1B1.1.  The offense level depends on all "relevant conduct," including

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

*Id.* § 1B1.3(a)(1)(A).  To determine the defendant's criminal history category, meanwhile, the court must consider any "prior sentence," *except* if it was for conduct that is relevant under § 1B1.3.  *See id.* §§ 4A1.1, 4A1.2 & cmt. n.1.  This ensures that the same conduct will never be considered toward both the offense level and the criminal history category.  *See United States v. Rivera-Gomez*, 634 F.3d 507, 510-12 (9th Cir. 2011) (explaining "interlocking definitions of relevant conduct and prior sentence").

---

[4] The government argues that the dispute centers on the District Court's application of the rule to the facts, which we review only for abuse of discretion.  *See Richards*, 674 F.3d at 219-23.  We disagree but note that we would reach the same result under that standard.

At Butler's sentencing, the District Court assumed "for purposes of deciding the case" that Butler presented the false identification documents to the New Jersey police officer in order "to avoid detection as an illegal immigrant here in the United States following an illegal re-entry." App. at 115. Nonetheless, the District Court held that this conduct was not relevant under § 1B1.3(a)(1). The District Court reasoned that "the relevant conduct exception applies only when, in a temporal sense, the conduct assists in the commission of the original crime." App. at 116.

This interpretation was erroneous. According to its plain terms, § 1B1.3(a)(1) defines relevant conduct to include any act committed by the defendant "to avoid detection or responsibility" for the underlying offense, without regard to temporality.[5] If Butler presented false identification to avoid detection as an illegal reentrant, that conduct was relevant within the meaning of § 1B1.3(a)(1). *See Rivera-Gomez*, 634 F.3d at 513 ("[I]f Rivera-Gomez resisted arrest in order to 'avoid detection or responsibility' for the illegal reentry offense . . . , the district court erred in accounting for the conduct as a prior sentence, rather than as part of the offense level."); *United States v. White*, 335 F.3d 1314, 1320 (11th Cir. 2003) (where White "gave a false name 'to avoid detection or responsibility for [the reentry] offense,'" the district court "clearly erred" by assessing criminal history points for his false-information conviction).[6]

---

[5] Sentencing courts consider temporal proximity to determine whether separate offenses are part of the "same course of conduct" pursuant to § 1B1.3(a)(2), s*ee, e.g.*, *United States v. Kulick*, 629 F.3d 165, 171 (3d Cir. 2010), but that provision is not at issue here.

[6] The government invokes *United States v. Washington*, 549 F.3d 905 (3d Cir. 2008), for the proposition that "a prior conviction constitutes 'relevant conduct' only if it is

Classifying prior conduct as relevant to the offense level rather than a defendant's criminal history score does not require the sentencing court to ignore it, as the District Court seems to have feared. On the contrary: It means that the sentencing court must take it into account in assessing, *inter alia*, the specific offense characteristics and applicable Chapter Three adjustments. *See* § 1B1.3(a). Furthermore, the sentencing court may consider all relevant conduct in the discretionary determination of the final sentence.

In Butler's case, as the government notes, classifying his false-identification conduct as "relevant" may actually result in a higher Guidelines range, should the District Court determine that it warrants an adjustment. *See, e.g.*, U.S.S.G.§ 3C1.1 & cmt. n.4(G) (adjustment for obstruction of justice applies if defendant made false statements that "significantly obstructed or impeded the official investigation or prosecution of the instant offense"). Alternatively, Butler's conduct "may warrant a greater sentence within the otherwise applicable guideline range." *Id.* cmt. n.5. On the other hand, the District Court could determine that no adjustment applies, and sentence Butler to less than forty-

---

temporally and operationally connected to the current offense." Response Br. at 36. *Washington* neither asserts nor supports that rule. It simply notes that this court, in *Irvin*, 369 F.3d at 292, found Irvin's prior-conviction conduct to have occurred "during the commission" of the sentencing offense because it was temporally and operationally related. *See Washington*, 549 F.3d at 920-21. Neither case imposes a temporal requirement on the avoid-detection prong of § 1B1.3(a)(1). The government also urges us to follow *United States v. Vargas-Garcia*, 434 F.3d 345 (5th Cir. 2005), in which the court held that Vargas-Garcia's resisting-arrest offense was not "relevant conduct," but rather an offense separate from his illegal reentry that could properly be considered in calculating his criminal history. *Id.* at 349. We are not persuaded by the reasoning in *Vargas-Garcia* and decline to follow it.

8

six months' imprisonment.  We therefore cannot say that the District Court's error was harmless.

IV.

For the foregoing reasons, we will vacate the judgment of sentence and remand for resentencing in accordance with this opinion.